CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 0 2 2016

JULIA C. DUDLEY, CLERK
BY: /s/
     DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NATIONAL LIABILITY AND FIRE INSURANCE CO., et al., | )<br>)<br>) |
| Plaintiffs, | ) Civil Action No.: 7:16-cv-00141 |
| v. | )<br>) |
| LEDBETTER EXCAVATING, INC., et al., | ) By: Hon. Michael F. Urbanski<br>)     United States District Judge |
| Defendants. | ) |

## MEMORANDUM OPINION

This matter is before the court on plaintiff National Liability and Fire Insurance Co.'s ("National") motion to dismiss defendant Ledbetter Excavating, Inc.'s (collectively, with Morris Ledbetter, "Ledbetter") counterclaim and third-party defendant Maverick Express Carriers, LLC's ("Maverick") motion to dismiss defendant Ledbetter's counterclaim and to join National's pleadings. Because Ledbetter has plausibly stated a claim for relief, the court **DENIES** National's motion (ECF No. 24), and **GRANTS in part** and **DENIES in part** Maverick's motion (ECF No. 31).[1]

I.

Federal Rule of Civil Procedure 12(b)(6) allows a defense based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a

---

[1] Maverick's memorandum in support of its motion merely asks the court to consider the reasoning of National's memorandum, and otherwise makes no arguments in favor of dismissal. See ECF No. 32, at 2. Therefore, to the extent Maverick moves to join National's pleadings, the motion is **GRANTED**. For the reasons set forth below, the motion is otherwise **DENIED**.

motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint." Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 684 F.3d 462, 467 (4th Cir. 2012) (internal quotation marks omitted). The Supreme Court has held that

> [t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). The court will therefore accept all of the facts alleged in Ledbetter's counterclaim as true and "draw all reasonable inferences in [its] favor" for the purposes of evaluating this motion. Id. (internal quotation marks omitted). The following facts are taken from Ledbetter's counterclaim. (ECF No. 20).

National provides insurance coverage to Maverick. On August 27, 2015, a tractor-trailer owned by Maverick and driven by its employee, Jorge Miranda, got stuck near Route 40 in Franklin County, Virginia. Miranda called a towing service, and Morris Ledbetter of Ledbetter Excavating arrived. Morris Ledbetter towed the tractor-trailer to Route 40 and then, with Miranda's permission, drove it down the mountain to get it to a portion of the road where Miranda could safely drive it.[2] En route, Mr. Ledbetter lost control of the tractor-trailer and it overturned.

---

[2] National disputes this characterization of events. According to National, Mr. Ledbetter personally drove the tractor-trailer down the mountain to ensure payment for his towing services. ECF No. 1, ¶ 12.

2

Miranda originally brought a separate action (Case No. 7:16-cv-052) against Ledbetter for injuries sustained in the accident. Miranda's case was later consolidated with the instant case, see ECF Nos. 13, 36, a subrogation action filed by National against Ledbetter[3] for property damages arising from the accident. In its answer, Ledbetter Excavating (joined by Morris Ledbetter) filed a counterclaim and third-party complaint for declaratory judgment against National, Maverick, and Miranda. ECF No. 20. Ledbetter seeks a declaration that Maverick's insurance policy with National requires National to defend and indemnify Ledbetter against Miranda's personal injury claims, because the insurance policy covers Ledbetter as a "permissive driver" of the tractor trailer. Id. ¶ 16. National and Maverick now move to dismiss the counterclaim/third-party complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that National's policy does not extend coverage to car towing businesses. ECF No. 25, at 11.

## II.

Ledbetter asks the court to declare that National is required to provide liability insurance coverage to, and thus defend and indemnify, Ledbetter. Ledbetter argues that Mr. Ledbetter was a "permissive driver" of the tractor-trailer, pursuant to the following provision of the insurance policy between National and Maverick defining "insureds":

> 1. Who Is An Insured
>    a. You for any covered "auto".
>    b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:
>    . . .

---

[3] Although National did not sue Ledbetter individually, National's complaint refers to *defendant* Ledbetter "driving the [t]ractor-[t]railer down the mountain." ECF No. 1, ¶ 14.

3

> (3) Someone using a covered "auto" while they are working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.

ECF No. 25, at 4.

The crux of Ledbetter's counterclaim is that Morris Ledbetter is covered by the policy because he was driving the tractor-trailer with permission. National, in moving to dismiss the counterclaim, contends that the plain language of the policy unambiguously excludes Ledbetter from coverage. National argues that a business that tows "autos" is a business that sells, services, repairs, or parks "autos" and is thus excluded from coverage. Ledbetter counters that the exception from coverage does not apply because it does not include towing, either explicitly or impliedly.

## A. Texas Law

There does not appear to be any Texas[4] precedent directly on point. Ledbetter cites Allstate Ins. Co. v. Universal Underwriters Ins. Co., 439 S.W.2d 385 (Tex. Civ. App. 1969), for the proposition that towing a vehicle is not "selling, repairing, servicing, or parking" it.[5] In that case, an employee of an auto repair shop used his motorcycle to get to a car that needed repairs, attached his motorcycle to the car, drove the car to the repair shop (towing his motorcycle), and got into an accident along the way. Id. at 389. The court held that this use did not fall within the policy's automobile business exclusion. Id.

---

[4] Under Virginia choice of law rules, a dispute concerning an insurance policy is governed by the law of the state in which the policy was delivered. See Seabulk Offshore, Ltd. v. Am. Home Assur. Co., 377 F.3d 408, 418 (4th Cir. 2004). The insurance policy at issue here was delivered in Texas. Accordingly, as both parties agree, Texas substantive law applies.

[5] Insurance policies often collectively refer to "selling, servicing, repairing, and parking" (sometimes together with "storing") as the "automobile business." See Allstate Ins. Co., 439 S.W.2d at 387. Though the policy in question here does not use that terminology, the court will adopt it for convenience.

4

The policy at issue in Allstate, however, differs from the policy here. In Allstate, the permissive driver exception excluded those driving the car "while *the car* was being 'used in the automobile business.'" Id. at 387 (emphasis added). The policy at issue here excludes from coverage "Someone using a covered 'auto' while *they* are working" in one of the listed occupations. ECF No. 25, at 4 (emphasis added). "[C]ourts have recognized the distinction between language excluding coverage while the car was being used by a Person engaged in the automobile business and language excluding coverage of the car while it was being Used in the automobile business." Id. at 388. "[T]he two exclusionary provisions are readily susceptible of different interpretations." Id. (quoting Wilks v. Allstate Ins. Co., 177 So. 2d 790, 792 (La. Ct. App. 1965)). Thus, the Allstate court merely found that the car was not being used in the automobile business while towing the motorcycle. The holding in Allstate did not conclude that a towing company is not an automobile business, and it would not prevent the conclusion that Mr. Ledbetter was a *person* working in the automobile business while he was towing the tractor-trailer.

National fares no better. It cannot point to any case interpreting Texas law that has found an auto towing business to be a "a business of selling, servicing, repairing or parking autos." It principally relies on Humble Oil & Ref. Co. v. Lumbermens Mut. Cas. Co., 490 S.W.2d 640 (Tex. Civ. App. 1973), but that case did not concern towing businesses. Instead, Humble Oil merely concluded that when a policy exclusion "specifically applies to the 'business of servicing' automobiles," it is immaterial whether the servicer was driving the vehicle while servicing it, before, or after, so long as the use was associated with the driver working in the business of servicing autos. Id. at 643; accord Universal Underwriters Ins. Co.

5

v. Pan Am. Ins. Co., 450 F.2d 1050, 1052 (5th Cir. 1971). Ledbetter's counterclaim is founded on the premise that a towing business is not such a business. Humble Oil does not address this point.

National also argues that because the court in Mid-Continent Cas. Co. v. Lynch, No. 4:97-CV-938-Y, 1999 WL 706125 (N.D. Tex. Sept. 15, 1998), affirmed, 193 F.3d 517, 1999 WL 706125 (5th Cir. Aug. 19, 1999), found that a car cleaning business was a business servicing autos, it follows that a car towing business is one as well. However, there are important distinctions between washing and towing. Most pertinently, the former business services the auto by cleaning it, thereby improving it (aesthetically if nothing else). The latter, however, does not improve the auto itself; it merely moves the auto for its owner, and in that sense provides a service for the owner, not the auto. National argues that "[t]he phrase 'business of servicing autos' is . . . reasonably understood to mean services to a vehicle that are not repairs." ECF No. 27, at 6. Thus, even adopting National's own definition, a towing business is arguably not a business servicing autos because it does not involve services *to* a vehicle.

In sum, the issue here—whether a towing business is a "business of selling, servicing, repairing or parking autos," and thus is excluded from National's permissive-driver coverage—has not been squarely resolved under Texas law. This militates in favor of a finding that Ledbetter is not unambiguously excluded from coverage, and that the motion to dismiss should be denied. However, because no Texas court has directly resolved this issue, the court will go on to consider case law from other jurisdictions.

6

## B. Law of Other Jurisdictions

"The automobile business exclusion has a long history," Borden v. Progressive Direct Ins. Co., 30 N.E.3d 856, 857 (Mass. App. Ct. 2015), which has "engendered a considerable amount of litigation," Transamerica Ins. Grp. v. State Farm Auto. Ins. Co., 492 F. Supp. 283, 285 (D. Nev. 1980). Courts around the country have been called on to interpret provisions similar to the one at issue today. This precedent counsels against granting National's motion to dismiss, and in fact strongly suggests that Mr. Ledbetter is not excluded from coverage, and should be indemnified and defended as a permissive driver.

The automobile exception "is based on the assumption that the lack of control over the insured vehicle increases the risk to the owner's insurer." Borden, 30 N.E.3d at 857. Thus, the exception allows insurers to specify certain businesses that do not receive coverage; when those businesses take control of the insured's vehicle, they, rather than the insurer, bear the risk of loss. Id. However, these businesses must be specified clearly. "[E]ffect must be given to the plain, ordinary meaning of the language employed," and "a court should not . . . stretch its imagination in order to read ambiguity into a policy where none is present." Mullins v. Fed. Dairy Co., 568 A.2d 759, 762 (R.I. 2015); see Transamerica Ins. Grp., 492 F. Supp. at 287 ("The fact that a lawyer is able to make an argument as to the proper construction of any given language does not make that language ambiguous.").

Moreover, any ambiguity in the contract must be interpreted in favor of coverage; "[t]hus, an omnibus clause extending coverage to other users of the insured vehicle must be liberally construed, while exclusions from coverage must be construed narrowly." Md. Cas. Co. v. Integrity Ins. Co., 693 F.2d 506, 508 (5th Cir. 1982) (per curiam); see Puckett v. U.S.

7

Fire Ins. Co., 678 S.W.2d 936, 938 (Tex. 1984) ("[I]nsurance policies are strictly construed in favor of the insured in order to avoid exclusion of coverage"); Allstate, 439 S.W.2d at 388 (applying this rule to permissive driver exceptions in insurance policies).

However, once the insurer specifies that a particular business is not covered, the automobile exception operates broadly: Coverage is typically barred whenever the person driving the insured vehicle is doing so while working in connection with an automobile business. Thus, for example, similar automobile exceptions have been held to apply when the vehicle is being transported, as long as that transportation took place pursuant to a listed automobile business.[6] See, e.g., Universal Underwriters Ins. Co. v. Pan Am. Ins. Co., 450 F.2d 1050 (5th Cir. 1971) (accident occurred when servicer was returning auto to insured after making repairs); Deville v. U.S. Fid. & Guar. Co., 258 So.2d 694 (La. App. 1972) (accident occurred when auto was being transported to servicer for repairs).

With this precedent in mind, the court turns to the facts of the instant case. Mr. Ledbetter was driving, not towing, the tractor-trailer when the accident occurred. An argument could be made that this fact alone would permit a finding that the exception does not apply: driving is surely not "selling, servicing, repairing or parking." ECF No. 25, at 4. However, it is also clear that, though he wasn't towing the tractor-trailer, he was driving "while . . . working in [the] business of" towing. Id. Mr. Ledbetter had just towed the tractor-trailer off the shoulder and, taking Ledbetter's account as true, was driving to a safe place in

---

[6] A few courts have held the automobile exception to be inapplicable where the activity in question (servicing, for example) already had been completed when the accident occurred. E.g., Dumas v. Hartford Accident & Indem. Co., 181 So.2d 841 (La. Ct. App. 1966). This is decidedly the minority position, and contradicts the policy considerations undergirding the automobile exception by transferring the risk of loss back to the insurer before the insured regains control of the vehicle.

8

order to return control to Miranda. Thus, if towing is included within the policy exception, so is Mr. Ledbetter's driving, and he is likely not an insured driver.

The problem for National, though, is that towing is not included within the language of the exception. The exception lists "selling, servicing, repairing [and] parking" as businesses that are not covered. Id. Towing, or some variant thereof, could easily have been added to the list. For example, the court in Borden considered an automobile exception that excluded from coverage, inter alia, "the business of . . . delivering . . . vehicles." 30 N.E.3d at 857 n.3 (emphasis omitted). The court held that the automobile exception applied, because "[t]he delivery of a vehicle by a business may be accomplished in several ways, including through the use of a driver, a flatbed truck, a car carrier, or a tow truck." Id. at 858–59. Towing was a type of delivery, and thus the policy in issue excluded tow truck drivers from coverage. Id. at 859.

Courts that have included transportation of an insured vehicle within the ambit of the automobile exception absent language similar to that in Borden have "explicitly rel[ied] on the fact that the transportation was conducted *in connection with* an activity expressly mentioned" in the policy. Md. Cas. Co., 693 F.2d at 509; see Howard v. Ponthieux, 326 So. 2d 911 (La. Ct. App. 1976). Simply put, "transportation of automobiles, without more, is not an automobile business." Md. Cas. Co., 693 F.2d at 509 (citing Demshar v. Aaacon Auto Transp., Inc., 337 So. 2d 963 (Fla. 1976), and Allstate Ins. Co. v. Federal Ins. Co., 326 A.2d 29 (Md. Ct. Spec. App. 1974)).

National has not alleged that Mr. Ledbetter was driving the tractor-trailer to allow him to later sell, service, repair, or park it. He was hired solely to remove the vehicle from

9

the shoulder of the road and take it to a location from which Miranda could resume his journey. His relationship to the car was entirely unconnected to any activity included within the automobile exception at issue. He therefore is likely covered as a permissive driver. See Md. Cas. Co., 693 F.2d at 509; Mullins, 568 A.2d at 563 (driver not covered by automobile exception where "[t]he language of the policy is clear on its face and does not include towing among the activities that make up an automobile business").

### III.

The court finds that Ledbetter's counterclaim has sufficient merit to survive National's motion to dismiss under the pleading standards of Twombly and Iqbal. Ledbetter's allegation that he was a "permissive driver" under the terms of National's policy, and therefore is entitled to defense and indemnification, is plausible, and is sufficient to survive a motion to dismiss under Rule 12(b)(6). For these reasons, National's and Maverick's motions to dismiss, ECF Nos. 24, 31, are **DENIED**. An appropriate Order will be entered this day.

The Clerk is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

Entered: 11-02-2016

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge